[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
This action was originally brought to foreclose a mechanics lien. The underlying obligation was allegedly for building materials furnished to the defendant for work being done on a residential property he had purchased for speculation.
When the mortgagee of the defendant foreclosed on the property for non-payment of the mortgage, the plaintiff filed an amended complaint, seeking to recover on its open account in the name of the defendant. The principal sum claimed is $9,788.54 plus interest and attorney's fees.
The plaintiff relies on a series of invoices dated from August to November of 1995, reflecting various deliveries to the building site.
The defendant, in a special defense, denies that the signatures on the documents which formed the basis for the creation of the open account are his (Exhibit A).
 DISCUSSION I
Taking first the defendant's special defense that he did not sign the various documents upon which the plaintiff relied to set up an account in the defendant's name, the defendant offered hand writing exemplars which he prepared in the course of his testimony at trial.
The defendant, in denying the contested signatures were his, stated they were too tight or close to be his. These signatures were affixed to documents, four in all, with fairly small and narrowly defined signature lines. The signatures were all confined to the signature lines. CT Page 14060
The exemplars were deposited on a sheet from a yellow legal pad and occupy about a half of the horizontal area available, excluding the left side red margin line. (Exhibit I). Vertically, they take up most of the lines on which they were placed and in most cases intrude into the lines above and below.
Lacking any testimony from a handwriting expert, the court is left to make a visual comparison. That comparison compels the conclusion that, the exemplars resemble the contested signatures and some of the features are remarkably similar.
However, there is also substantial evidence to support the plaintiffs claim that the defendant signed the items comprising Exhibit A. Specifically:
1. The credit application contains detailed personal data that only the defendant would be aware of — social security number, bank accounts with account numbers, credit cards with account numbers, etc.
2. Exhibit B, the plaintiff's record of its transactions with the defendant, reflects a substantial payment and credits via adjustments to charges. This suggests the question as to who but the defendant would make a payment or contact the plaintiff about credits.
The court finds this evidence compelling and concludes the defendant signed the documents comprising Exhibit A.
 II
In the course of this trial, the court noted that when the defendant pleaded to the foreclosure complaint referred to above he interposed three special defenses. One alleged that the charges for materials were in excess of "that upon which had beenagreed." (Emphasis mine).
The second alleged the plaintiff shipped and charged for "wrong materials" and amongst other things caused construction delays.
The third special defense alleges the plaintiff failed to meet its promised delivery dates and caused delays adding expense to the project. CT Page 14061
At no time did the defendant ever suggest the defense that he never signed the credit application and accompanying documents.
When asked about this, the defendant, after being permitted to discuss the disturbing discrepancy with his attorney, stated that he merely turned this matter over to his attorney to sort out and at that time he had no knowledge of the plaintiff's claims by virtue of the credit application, etc., comprising Exhibit A.
In preparing this decision, the court referred to the pleadings in their entirety and now notes the following:
1. Paragraph 2 of the foreclosure complaint and the amended complaint alleges that on or about August 8, 1995, the defendant tendered to the plaintiff an application for credit. A copy was attached and this is the same item as represented by Exhibit A.
2. In his answers to these complaints the plaintiff admittedparagraph 2.
In the face of that admission and the weak explanation of the change in defense, the court is compelled to conclude that the defendant signed the items comprising Exhibit A and that his denial that these were his signatures must be rejected.
 III
When the defendant testified, the court and the plaintiff heard for the first time the defendant's explanation of how the building he owned was completed. According to him, other people "handled aspects" of the construction. He didn't tell them what to do but told them to finish it. He conceded it was possible they ordered the building materials set out in Exhibit B.
The court accepts the testimony of the plaintiffs credit manager, Patricia Ellis, and finds the plaintiff furnished the material listed in Exhibit B to the defendant's job site.
The court gave permission for the plaintiff to file an amended complaint to conform to the above evidence offered by the defendant and this has been received.
Consequently, in view of the defendant's stated version of CT Page 14062 events, there is sufficient evidence for the court to conclude that, Section I and II above aside, this obligation was incurred on his behalf by his agents with his implied approval.
Therefore, even if the court's findings above are subsequently found to be erroneous, there is ample evidence to find for the plaintiff on the agency count and to sustain a judgment for the plaintiff on that count.
 CONCLUSION
Having concluded that the defendant signed Exhibit A and incurred the debt alleged as noted above, the court finds that judgment should enter for the plaintiff on the first count for the principal sum of $9,788.54
The plaintiff is also entitled to interest on this amount. Exhibit B is ambiguous on this point, setting fourth 1 1/2% per month under "terms of Sale", but 2.1% on the actual invoices. The court will award legal interest at the rate of 10% per annum, commencing November 30, 1995, the date of the statement reflecting all purchases, payments and credits but excluding any finance charges.
The court computes the interest from November 30, 1995 to October 25, 1999, the date hereof, at: $3,818.94
The plaintiff is also entitled to attorney's fees by virtue of the Terms of Sale contained in Exhibit B. Plaintiff's counsel filed an affidavit addressing his fees, claiming $175.00 per hour for himself and $50.00 per hour for his paralegal, for a total of $1677.00 and then requested $1,050.00 for six hours of trial time.
The defendant expressed no objection to this offer.
The court has examined the schedule affixed to the affidavit and finds the sum requested to be fair and reasonable. A total of $2,727.00 is awarded.
Judgment may enter for a total of $16,334.48, as follows:
 a. principal $7,284.00 b. Interest, as above $3,818.94 c. Attorney's fees $2,727.00
CT Page 14063
Total $16,334.48
The plaintiff is also entitled to taxable costs. The additional sum of $500.00 is taxed pursuant to Section 10-5 of the practice book, "Untrue allegations or denials" In this case, the denial by the defendant of his signature on Exhibit A in the face of the admission filed as to paragraph 2 of the complaint.
Anthony V. DeMayo Judge Trial Referee